1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HERMAN SCHWARTZ,

            Plaintiff,

    vs.

U.S. BANK, NATIONAL
ASSOCIATION AS TRUSTEE FOR
THE HOLDERS OF THE CSFB
ADJUSTABLE RATE MORTGAGE-
BACKED PASS-THROUGH
CERTIFICATES SERIES 2005-12; and
Does 1-10, inclusive,

            Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 11-08754 MMM (JCG)

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS

On October 21, 2011, Herman Schwartz filed this action against U.S. Bank, N.A., as Trustee for the Holders of the CSFB Adjustable Rate Mortgage Trust 2005-12, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-12 ("U.S. Bank"), and certain fictitious defendants, alleging legal violations associated with a promissory note and deed of trust Schwartz had executed.[1]  U.S. Bank failed to answer by November 22, 2011, and on December 15, 2011,

_____

[1] Complaint, Docket No. 1 (Oct. 21, 2011).

the clerk entered U.S. Bank's default.[2]  On March 22, 2012, the court granted defendant's motion to set aside its default,[3] and subsequently granted plaintiff leave to file a first amended complaint.[4]

Schwartz filed a first amended complaint on May 3, 2012.[5]  U.S. Bank has now filed a motion to dismiss.[6]  Schwartz opposes the motion.[7]

## I. FACTUAL BACKGROUND

Schwartz alleges that on September 30, 2005, he executed a promissory note and deed of trust in favor of Countrywide Home Loans, Inc., documenting a loan he obtained to purchase the real property located at 1704 Washington Way, Venice, California  90291.[8]  Schwartz asserts that the deed of trust on the property was invalidly assigned in a series of transactions.  An assignment was recorded on January 25, 2011 with the Los Angeles County Recorder's office; this assignment was purportedly executed on January 20, 2011, by Mortgage Electronic Registration Systems, Inc. ("MERS").[9]  A second assignment, executed May 4, 2011, was recorded five days later, transferring a beneficial interest in the mortgage to U.S. Bank "as Trustee for the Holders of the CSFB Adjustable Rate Mortgage Trust 2005-12, Adjustable Rate Mortgate-Backed Pass-Through

---

[2]Default by Clerk Entered ("Default"), Docket No. 8 (Dec. 15, 2011).

[3]Order Granting Defendant's Motion to Set Aside Entry of Default, Docket No. 15 (Mar. 22, 2012).

[4]Order re Stipulation to Amend Complaint, Docket No. 17 (May 1, 2012).

[5]First Amended Complaint ("FAC"), Docket No. 18 (May 3, 2012).

[6]Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"), Docket No. 21 (May 24, 2012).  See also Reply in Support of Motion to Dismiss Plaintiff's First Amended Complaint ("Reply"), Docket No. 27 (July 9, 2012).

[7]Plaintiff's Opposition to Defendant US Bank, N.A.'s Motion to Dismiss ("Opp."), Docket No. 24 (July 2, 2012).

[8]FAC, ¶ 13.

[9]Id., ¶ 15.  This assignment is attached to the complaint as Exhibit A.

1    Certificates, Series 2005-12."[10]   Schwartz alleges that the assignments are invalid and cannot

2    effect any "legal transfer of any interest under the Deed of Trust or Note to U.S. Bank."[11]

3    Specifically, Schwartz alleges that MERS cannot convey an interest in real property in its own

4    name, and that Kevin Rudolph, allegedly MERS's "Assistant Secretary," is a "robo-signer" who

5    signs thousands of foreclosure documents on behalf of a number of entities without any knowledge

6    of the documents he is signing or their legal effect.[12]

7         Schwartz asserts that shortly after the loan's origination, Countrywide sold his loan to

8    unknown entities, who attempted to securitize loan into the CSFB Adjustable Rate Mortgage Trust

9    2005-12.[13]  He contends that for his mortgage to be validly included in the trust, the entities

10   involved had to comply with various agreements and laws, including the trust agreement that

11   governed the trust.[14]  The trust specified a "closing date" of November 30, 2005, and stated that

12   all notes and mortgages that were to be part of the trust had to be transferred by that date to

13   become part of the trust res.[15]

14        Schwartz alleges that the January and May 2011 assignments described above "demonstrate

15   non-compliance with the Trust Agreement," such that defendant lacks authority to foreclose on

16   the property.[16]  He asserts that the trust that purportedly holds his note and deed of trust has been

17   dissolved, and cites evidence to this effect, including a title report and analysis of the property

18   records, communications with defendants, "his counsel's research" of various public sources

19   including "publicly available securitization documents and practices," and an audit of defendant's

---

21   [10]*Id.*, ¶ 16.  This assignment is attached to the complaint as Exhibit B.

22   [11]*Id.*, ¶ 18.

23   [12]*Id.*, ¶¶ 18-24.

24   [13]*Id.*, ¶ 26.

25   [14]*Id.*

26   [15]*Id.*, ¶ 27.

27   [16]*Id.*, ¶ 28.

1    SEC filings.[17]   Schwartz's allegations are supported by a forensic loan audit conducted by

2    McDonnell Property Analytics, Inc., a securitization forensic auditor.[18]

3        Schwartz asserts that he has suffered various injuries due to defendant's unlawful conduct,

4    including damage to his credit score, slander of title, and inability to identify the holder of the note

5    and true creditor on his mortgage.[19]  He alleges claims for: (1) cancellation of instruments under

6    California Civil Code § 3412; (2) violation of the Unfair Competition Law ("UCL"), California

7    Business and Professions Code § 17200, et seq.; (3) declaratory relief; and (4) violation of the

8    Truth in Lending Act ("TILA"), specifically 15 U.S.C. § 1641(g).

9

10                      **II.  DISCUSSION**

11    **A.     Defendant's Request for Judicial Notice**

12        Defendant has filed a request for judicial notice with its motion to dismiss.  In deciding a

13    Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents

14    attached thereto.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002);

15    *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.

16    1990).  A court normally must convert a Rule 12(b)(6) motion to a Rule 56 motion for summary

17    judgment if it "considers evidence outside the pleadings . . . .  A court may, however, consider

18    certain materials – documents attached to the complaint, documents incorporated by reference in

19    the complaint, or matters of judicial notice – without converting the motion to dismiss into a

20    motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

21    See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (a court may consider

22    "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

23    particular, documents incorporated into the complaint by reference, and matters of which a court

24    may take judicial notice"); *Branch v. Tunnell* 14 F.3d 449, 453 (9th Cir. 1994), overruled on

25

26         [17]*Id.*, ¶ 30.

27         [18]*Id.*, ¶ 31.

28         [19]*Id.*, ¶ 32.

other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

U.S. Bank asks that the court take notice of the following documents: (1) a notice of default recorded June 12, 2009; (2) a notice of trustee's sale recorded December 22, 2009; (3) a document that purports to be a ruling on a demurrer to a first amended complaint in *Schwartz v. Countrywide Home Loans, Inc.*; and (4) a pleading titled "Notice of Ruling" filed in the same Los Angeles Superior Court action.[20]   As noted, the court can consider material that can be judicially noticed under Rule 201 of the Federal Rules of Evidence.  FED.R.EVID. 201.  Rule 201 provides that the court may take judicial notice of "[o]fficial acts of the legislative, executive, and judicial departments of the United States," and "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."

"Judicial notice is appropriate for records and 'reports of administrative bodies.'" *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008) (quoting *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954)).  Two of the documents that U.S. Bank seeks to have the court consider were recorded in the Los Angeles County Recorder's Office.  Other courts have taken notice of such documents as public filings.  See *Velazquez v. GMAC Mortgage Corp.*, 605 F.Supp.2d 1049, 1057-58 (C.D. Cal. 2008) (taking judicial notice of documents recorded by the Los Angeles County Recorder's Office, including deeds of trust); see also *Fimbres v. Chapel Mortgage Corp.*, No. 09-CV-0886-IEG (POR), 2009 WL 4163332, *3 (S.D. Cal. Nov. 20, 2009) (taking judicial notice of a deed of trust, notice of default, notice of trustee's sale, assignment of deed of trust, and substitution of trustee as each was a public record); *Angulo v. Countrywide Home Loans, Inc.*, No. 1:09-CV-877-AWI-SMS, 2009 WL 3427179, *3 n. 3 (E.D. Cal. Oct. 26, 2009) ("The Deed of Trust and Notice of Default are matters of public record.  As such, this court may consider these foreclosure documents"); *Distor v. U.S. Bank NA*, No. C 09-02086 SI, 2009 WL 3429700, *2 (N.D. Cal. Oct. 22, 2009) (finding that a deed of trust, notice of default and election to sell

---

[20]Request for Judicial Notice ("RJN"), Docket No. 22 (May 24, 2012), Exhs. 1-4.

under deed of trust, and notice of trustee's sale were matters of public record and thus proper subjects of judicial notice).

The other two documents of which U.S. Bank seeks to have the court take judicial notice were filed in the purportedly related action of *Schwartz v. Countrywide Home Loans, Inc.* in Los Angeles Superior Court. Because "[a] court may take judicial notice of court records and other matters of public record," these documents are proper subjects of judicial notice. See *Sherman v. Reisig*, No. 2:10–cv–02939 FCD KJN PS, 2010 WL 5169067,*2 n. 2 (E.D. Cal. Dec. 14, 2010); see also *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006).

Schwartz objects to the court's consideration of the documents insofar as they are offered to establish that the "foreclosure process was properly conducted"; he challenges their validity and legal effect.[21] He does not assert, however, that they are not authentic. The court therefore takes judicial notice of the documents' existence and contents, but does not accept the truth of the matters stated therein.

**B.     Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6)**

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

The court need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. See *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 553–56 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

---

[21]Opp. at 4.

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); see also *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

## C.   Whether Plaintiffs Can Assert Claims That Challenge the Validity of the Securitized Trust

Most of plaintiff's claims rely on allegations concerning the securitization of the loan.[22] U.S. Bank contends that plaintiff's first three claims must be dismissed because he lacks the ability to challenge the securitization of the loan.  Numerous courts have examined and rejected arguments that pooling a loan in a securitized trust deprives defendants of standing to foreclose on a property.  See, e.g., *Rodenhurst v. Bank of Am.*, 773 F.Supp.2d 886, 899 (D. Haw. 2011) ("The overwhelming authority does not support a [claim] based upon improper securitization "); *Lane v. Vitek Real Estate Industries Group*, 713 F.Supp.2d 1092, 1099 (E.D. Cal. 2010) ("[P]laintiffs contend that none of the defendants have the authority to foreclose because their loan was packaged and resold in the secondary market, where it was put into a trust pool and securitized.  The argument that parties lose their interest in a loan when it is assigned to a trust pool has also been rejected by many district courts"); *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F.Supp.2d 1039, 1043 (N.D. Cal. 2009) ("Hafiz's request for declaratory relief is based on the erroneous theory that all defendants lost their power of sale pursuant to the deed of trust when

---

[22]FAC, ¶¶ 25-32.

7

the original promissory note was assigned to a trust pool.  This argument is both unsupported and incorrect.  Hafiz's complaint refers to each of the defendants in their capacities as lenders and trustees.  In fact, attached as exhibits to Hafiz's complaint are the mortgage agreement, the deed of trust, the refinancing agreement, and related documentation.  Hafiz does not dispute that the parties are who they claim to be.  She merely suggests that they must produce a physical copy of the original note before exercising their contractual rights.  Hafiz[ ] argues a moot and distracting point"); see also *Canales v. Federal Home Loan Mortg. Corp.*, No. CV 11–2819 PSG (VBKx), 2011 WL 3320478, *5 (C.D. Cal. Aug. 1, 2011) ("Plaintiff's claim relating to an 'illegal pooling agreement' is not supported by any factually specific allegations and therefore fails to meet the pleading standard set forth in Rule 8.  Moreover, federal district courts in California have repeatedly rejected Plaintiff's argument that a party loses his or her interest in a loan when it is assigned to a trust pool and securitized" (citation omitted)); *Bascos v. Federal Home Loan Mortg. Corp.*, No. CV 11–3968–JFW (JCx), 2011 WL 3157063, *4 (C.D. Cal. Jul. 22, 2011) ("[S]imply because the note may have been transferred to Freddie Mac and then securitized does not affect MERS' authority to foreclose and sell the Subject Property.  Under the Deed of Trust, MERS is the nominee, not just for the original lender, but also for the Lender's successors and assigns.  To the extent Plaintiff claims that MERS lacks the authority to initiate the foreclosure proceedings because it was not authorized to do so by the owner of the note, Plaintiff has failed to allege any facts that MERS lacked such authorization, and without such facts, Plaintiff cannot pursue such an unsupported, speculative theory"); *Benham v. Aurora Loan Services*, No. C-09-2059 SC, 2009 WL 2880232, *3 (N.D. Cal. Sept. 1, 2009) ("Other courts . . . have summarily rejected the argument that companies like MERS lose their power of sale pursuant to the deed of trust when the original promissory note is assigned to a trust pool").

Schwartz does not address this issue in his opposition or discuss the overwhelming weight of authority against him.  Given his failure to plead any facts or offer any legal argument suggesting an entitlement to challenge any foreclosure sale on the basis that his loan was bundled and sold, the court adopts the reasoning of other district courts and concludes that Schwartz cannot assert that U.S. Bank lacks standing to foreclose because the loan was securitized.  Schwartz's

1  first cause of action for cancellation of instruments, his second cause of action under the UCL,

2  and his third cause of action for declaratory relief must be dismissed on this ground to the extent

3  they challenge the securitization.

4         **D.**      **Whether Plaintiff has Stated a Claim to Cancel the Assignments of the Deed of**

5                  **Trust, the Notice of Default and Any Notice of Sale**

6        Schwartz's first cause of action seeks to cancel the assignments of deed of trust, the notice

7  of default and any subsequent notice of sale.  Under California Civil Code § 3412, "[a] written

8  instrument, in respect to which there is a reasonable apprehension that if left outstanding it may

9  cause serious injury to a person against whom it is void or voidable, may, upon his application,

10 be so adjudged, and ordered to be delivered up or canceled."  To plead a claim under this statute

11 adequately, "the plaintiff must allege his title or interest in the affected property, and he must

12 allege the facts concerning the particular instrument, its apparent validity, and its actual

13 invalidity." *Huston v. Supportkids, Inc.*, No. C044876, 2004 WL 1895030, *3 (Cal. App. Aug.

14 25, 2004) (Unpub. Disp.) (citing 5 Witkin, Cal. Procedure, Pleading, § 630 at 94 (4th ed.

15 1997)).[23]

16       Schwartz's claim depends entirely on allegations that the documents are invalid due to the

17 securitization of his loan, that MERS lacked authority to assign the deed of trust without disclosing

18 the principal for which it acted, and that the individual who signed the assignments on MERS'

19 behalf was not its Assistant Secretary.   "District courts have persuasively concluded that

20 cancellation of an instrument is an equitable remedy and not an independent basis for liability."

21 *Lawson v. CitiCorp Trust Bank, FSB*, No. 2:11–cv–01163 KJM KJN PS, 2011 WL 3439223, *7

22 (E.D. Cal. Aug. 5, 2011).   Accordingly, absent allegations that U.S. Bank violated one of

23 Schwartz's substantive right, Schwartz cannot avail himself of the remedy of cancellation.

24 ————————————————

25     [23]"Although the court is not bound by unpublished decisions of intermediate state courts,

26 unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority."  *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05-313 VRW, 2005 WL 2893865,

27 *3 (N.D. Cal. Nov. 2, 2005) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220  n. 8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even

28 though such opinions have no precedential value")).

1    In his opposition, Schwartz asserts that MERS' execution of the assignments was improper

2    because it lacked an interest in the note, and had "no power in its own right to assign the note."[24]

3    Schwartz asserts that because MERS was acting as a nominee, it could assign the note only if it

4    disclosed the principal on whose behalf it was acting.  He argues that MERS's failure to disclose

5    its principal, and its apparent attempt to assign the note in its own name, renders the assignments

6    invalid.  Schwartz's sole support for this proposition is *Fisher v. Salmon*, 1 Cal. 413 (1851), a

7    centuries-old two-page opinion that does not clearly support the proposition advanced, but merely

8    held that because the party who executed a deed to property that was consideration for a note had

9    no authority to execute the deed, he could not enforce a guaranty of the note.  The key holding

10   of the case is that because the party that signed the property deed lacked authority, his *principals*

11   were not bound.  *Id.* at 414.  The case does not stand for the proposition that a deed signed by

12   agent is void unless it discloses the identity of the principal.  It is a well-established proposition

13   of California law that if an agent acting for a principal makes a contract in its own name without

14   disclosing the principal, then either the agent or the principal can be held liable on the contract.

15   See, e.g., *Sterling v. Taylor*, 40 Cal.4th 757 (2007) ("A contract made in the name of an agent

16   may be enforced against an undisclosed principal, and extrinsic evidence is admissible to identify

17   the principal").  The rule is *not* that the contract is void or voidable at the election of the third

18   party.[25]

19   _____

20       [24]Opp. at 7-8.

21       [25]Although the assignments do not expressly state that MERS is acting as a nominee or

22   agent, the deed of trust clearly states that "MERS is a separate corporation that is acting solely
     as a nominee for Lender. . . ." (FAC, Exh. E, Exh. A at 2.).  The deed of trust therefore clarifies

23   what the assignments themselves do not explicitly state, which is that MERS is acting only in its

24   capacity as nominee, and that it does not assert its own right to assign the deed of trust.  "Courts
     have often looked to the language of the deed of trust itself in analyzing whether MERS had the

25   legal right to foreclose on property."  *Malfatti v. Mortgage Electronic Registration Systems*, No.
     C-11-03142-YGR, 2012 WL 440718, *3 (N.D. Cal. Feb. 10, 2012); see also *Gomes v.*

26   *Countrywide Home Loans, Inc.*, 192 Cal.App.4th 1149, 1156-57 (2011) (stating that there was
     no "factual basis to suspect that MERS lack[ed] authority to proceed with foreclosure" and that

27   explicit language in the deed of trust precluded plaintiff from advancing such an argument).

28   Consequently, relying on documents that plaintiff himself appended to the complaint, therefore,

10

1    Furthermore, California's comprehensive statutory framework regulating nonjudicial

2    foreclosure does "not require the agent of a beneficial owner, such as MERS, to demonstrate that

3    it was authorized by the owner before proceeding with foreclosure, at least in the absence of a

4    factual allegation suggesting the agent lacked authority." *Herrera v. Federal Nat. Mortg. Assn.*,

5    205 Cal.App.4th 1495, 1504 (2012) (citing *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th

6    256, 267-68 (2011) ("To state a claim, plaintiff was required to allege not only that the purported

7    MERS assignment was invalid, but also that HSBC did not receive an assignment of the debt in

8    any other manner.  There is no such allegation").  Schwartz does not allege that MERS lacked

9    authority to assign the deed of trust; indeed, the deed of trust contained language – to which

10   Schwartz agreed by executing the document – that MERS could assign the lender's beneficial

11   interest under the deed of trust to another party.  See *Forbes v. Countrywide Home Loans, Inc.*,

12   No. E051309, 2011 WL 4985965, *13-14 (Cal. App. Oct. 20, 2011) ("The question . . . is

13   whether MERS, as the nominee of the lender under the foreclosing first deed of trust, was

14   authorized to assign the lender's beneficial interest under the first deed of trust to FNMA, together

15   with the lender's right to collect the sums due on the note secured by the first deed of trust. . . .

16   [W]e conclude that, by executing the foreclosing first deed of trust, Forbes agreed that MERS

17   could assign the lender's beneficial interest under the first deed of trust to another party, such as

18   FNMA, together with the lender's interest in the underlying promissory note").[26]  For this reason,

19

20   ────────────

21   it appears clear dispute that MERS was authorized to assign the deed of trust.  See *Gomes*, *v.
     Mortgage Electronic Registration Systems, Inc.*, Civ. No. S–11–1790 KJM GGH PS, 2012 WL

22   370542, *3 (E.D. Cal. Feb. 3, 2012) ("Whether Countrywide is officially a member of MERS
     or not is irrelevant here – the fact remains that Countrywide, via the deed of trust, authorized

23   MERS to be its nominee and beneficiary under the deed of trust.  MERS on its part does not
     object to that designation and has apparently consented to it").

24

25   [26]The court relied on language found in Schwartz's deed of trust, to wit: "Borrower
     understand and agrees that MERS holds only legal title to the interests granted by Borrower in this

26   Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for
     Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests,

27   including, but not limited to, the right to foreclose and sell the Property. . . ."  (See Complaint,

28   Exh. E, Exh. A.)

11

Schwartz cannot state a claim based on allegations contrary to this acknowledgment.

Additionally, Schwartz's contention that MERS lacked an ownership interest in the promissory note is unavailing.[27]  This claim falls in the face of the language of the deed of trust; Schwartz's execution of the deed of trust constituted his acknowledgment, as noted, that "MERS, the designated beneficiary, was also broadly granted the right as the lender's nominee to 'exercise any or all of [ the lender's ] interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender. . .'  This language empowers MERS to take any actions within the lender's authority, including making assignments of the note (as well as the trust deed)." *Jimenez v. Mortgage Electronic Registration Systems, Inc.*, No. D056325, 2011 WL 1119651, *7 & n. 7 (Cal. App. Feb. 15, 2011) (quoting language identical to that found in the deed of trust executed by Schwartz).[28]

Schwartz also asserts that Kevin Rudolph, the MERS representative who signed the assignments, is not MERS's "assistant secretary" as the documents indicate. Schwartz alleges that he is instead a "robo-signer," who processes thousands of documents related to property foreclosures on behalf of a number of different entities "without any personal knowledge or corporate authority."  He contends that Rudolph is in fact an employee of Recontrust who signed the documents in California.[29]  Schwartz bases this allegation in part on a lawsuit against Recontrust filed by the Washington State Attorney General, during which a Recontrust representative testified regarding the ways in which the company signs and executes foreclosure documents *en masse*.[30]  The crux of the allegation is that teams at Recomtrust prepare foreclosure documents "without ever speaking to the servicer, verifying the information, or having any

---

[27]Opp. at 8.

[28]There is, moreover, no question that MERS assigned both the note and the deed of trust to U.S. Bank.  See FAC, Exh. A (assigning "all beneficial interest under that certain deed of trust dated 09/30/2005 . . . together with the note or notes therein described or referred to. . .); Exh. B (same).

[29]FAC, ¶ 18(c).

[30]*Id.*, ¶ 18(d).

12

personal knowledge" regarding the facts set forth in the documents.[31]

Accepting these factual allegations as true, it is not clear that they render the assignments invalid. As the Ninth Circuit recently explained, "the MERS system" plays a somewhat unique role in the foreclosure process. "MERS was designed to avoid the need to record multiple transfers of the deed by serving as the nominal record holder of the deed on behalf of the original lender and any subsequent lender." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011). The court continued:

> "At the origination of the loan, MERS is designated in the deed of trust as a nominee for the lender and the lender's 'successors and assigns,' and as the deed's 'beneficiary' which holds legal title to the security interest conveyed. If the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database, not in county records, because MERS continues to hold the deed on the new lender's behalf. If the beneficial interest in the loan is sold to a non-MERS member, the transfer of the deed from MERS to the new lender is recorded in county records and the loan is no longer tracked in the MERS system." *Id.*

Additionally, "MERS relies on its members to have someone on their own staff become a MERS officer with the authority to sign documents on behalf of MERS. As a result, most of the actions taken in MERS's own name are carried out by staff at the companies that sell and buy the beneficial interest in the loans." *Id.* at 1040 (internal citation omitted). Accordingly, the fact that a MERS representative may also be an employee of another entity is not unusual, and the mere fact that Rudolph signed documents on MERS's behalf while being in the employ of a different entity is not sufficient, in and of itself, to render the assignments fraudulent.[32] See *Gill v. Wells*

---

[31]*Id.*

[32]Although the court is bound to accept all allegations in the complaint as true, the brevity of the complaint's allegations regarding Rudolph's employment also raises doubts as to the sufficiency of plaintiff's claim. The complaint pleads no facts beyond the simple statement that Kevin Rudolph is "a member of the same Recontrust branch in Simi Valley" as the Recontrust

*Fargo Bank, N.A.*, No. 1:11–cv–00218 OWW GSA, 2011 WL 2470678, *6 (E.D. Cal. June 20, 2011) ("Plaintiffs have not pled any facts to establish or allege a good faith basis for the contention that Womack and Victa are not agents of MERS, and did not have authority to execute the Substitution of Trustee and Assignment of Deed of Trust"). Similarly, the allegation that teams of processors at Recontrust "prepare foreclosure documents without . . . having any personal knowledge as to all the facts to which they are attesting" does not clearly invalidate the assignments, which state only that Rudolph executed the assignments in his lawful capacity as an authorized agent of MERS.[33] Although Schwartz may dislike the way MERS conducts its business, neither his factual allegations nor any arguments in his opposition raise a plausible inference that the assignments were improperly executed.[34]

At the hearing, plaintiff's counsel argued that there was a more fundamental problem with U.S. Bank's efforts to foreclose. Specifically, she asserted that U.S. Bank was not the creditor on the loan, and thus had no ability to foreclose. Counsel noted allegations in the complaint that the purported assignments of the deed of trust took place in January and May 2011. Citing a portion of defendant's moving papers, which "contend[ ] a transfer occurred in 2005,"[35] counsel argued that there was a factual dispute about the date of the assignment that could not be resolved in the context of a motion to dismiss. Counsel's argument is apparently related to plaintiff's allegation that for his mortgage to have been validly included in the securitization trust, the transfer had to comply with various agreements and laws, including the agreement that governed

_____

employee who testified in the Washington action (FAC, ¶ 18(e)). The factual basis for this allegation is not clearly alleged.

[33]FAC, Exhs. A-B.

[34]Schwartz's opposition states that Rudolph was "never appointed by the Board of Directors of MERS, as required by the corporate by-laws and an adopted resolution by [MERS's board]." (Opp. at 9-10.) The brief fails to explain why Rudolph needed to be appointed in this fashion to assign a beneficial interest in the note and deed of trust to another entity.

[35]Opp. at 10. Defendant also cited Exhibit B to the complaint in support of this assertion, but that exhibit is merely one of the 2011 assignments of the deed of trust, and does not facially support defendant's statement.

the trust. The trust allegedly specified a "closing date" of November 30, 2005, which required that all notes and mortgages that were to be part of the trust be transferred by that date to become part of the trust res.[36]

As the complaint notes, California courts have held that under Civil Code § 2936, when there is an assignment of the note, "the security automatically follow[s] the note." *Quintero Family Trust v. OneWest Bank, F.S.B.*, No. 09–CV–1561–IEG (WVG), 2010 WL 392312, *7 n. 6 (S.D. Cal. Jan. 27, 2010). Subsequent "[r]ecordation of the assignment [is] necessary only to give constructive notice to third parties." *Id.* (citing *Burkett v. Doty*, 176 Cal. 89, 93–94 (1917)).[37] California courts have further suggested that "since the assignment of the debt (the promissory note), as opposed to the security (the DOT), commonly is not recorded, the lender could have assigned the note to the beneficiary in an unrecorded document not disclosed to plaintiffs." *Herrera*, 205 Cal.App.4th at 1506; see also *Fontenot*, 198 Cal.App.4th at 272 ("Plaintiff rests her argument on the documents in the public record, but assignments of debt, as opposed to assignments of the security interest incident to the debt, are commonly not recorded. The lender could readily have assigned the promissory note to HSBC in an unrecorded document that was not disclosed to plaintiff. To state a claim, plaintiff was required to allege not only that the purported MERS assignment was invalid, but also that HSBC did not receive an assignment of the debt in any other manner. There is no such allegation"). As a consequence, to state a claim that U.S. Bank did not receive a valid assignment of the debt, plaintiff must allege that it "did not receive a valid assignment of the debt *in any manner.*" *Fontenot*, 198 Cal.App.4th at 272. Although plaintiff has alleged that the recorded assignments are invalid because they did not comply with the trust agreement, he has not alleged that the loan was not validly assigned to U.S. Bank "in any manner." Under *Fontenot*, therefore, the allegations are insufficient to plead that

---

[36]FAC, ¶ 27.

[37]At oral argument, plaintiff quoted *Burkett* and asserted it supported his position. Aside from the fact that *Burkett* is nearly a century old and predates the current nonjudicial foreclosure statutory scheme, the case largely addresses the nature and legal effect of an assignment. See *Burkett*, 176 Cal. at 93-94. The discussion does not appear apposite to the facts here.

U.S. Bank was not the owner of the loan.

Finally, even assuming Schwartz can state a cause of action for cancellation of instruments, he cannot be awarded the relief he seeks absent his ability to "restore[ ] everything of value received from the loan transaction." *Sanchez v. MortgageIt, Inc.*, No. C10–4146, 2011 WL 588178, *2 (N.D. Cal. Feb.10, 2011). This is so because a claim under California Civil Code § 3412 is essentially an action for rescission. See *Nguyen v. Bank of America Nat. Ass'n*, No. 11–CV–03318–LHK, 2011 WL 5574917, *6 (N.D. Cal. Nov. 15, 2011); *Baum v. America's Servicing Co.*, No. 12–CV–00310–H (BLM), 2012 WL 1154479, *6 (S.D. Cal. Apr. 5, 2012) ("Additionally, Plaintiff fails to allege that he has restored everything of value received from the loan transaction. A cause of action requesting rescission requires such."); *Cerecedes v. U.S. Bankcorp*, No. CV 11–219 CAS (FMOx), 2011 WL 1666938, *5 (C.D. Cal. Apr. 29, 2011).

Although Schwartz's original complaint included a tender allegation, his amended complaint does not. Consequently, his first cause of action for equitable relief fails. See, e.g., *Gwin v. Pac. Coast Fin. Servs.*, No. 09cv2734 BTM (BLM), 2010 WL 1691567,*4 (S.D.Cal. Apr. 23, 2010) ("Cancellation is an equitable remedy"); *Qureshi v. Countrywide Home Loans, Inc.*, No. C 09–4198 SBA, 2010 WL 841669, *7 (N.D. Cal. Mar.10, 2010) ("A request to cancel a trustee's deed is a request for a remedy as opposed to an independent cause of action," citing *Porter v. Superior Court*, 73 Cal.App.3d 793, 799 (1977)); *Yazdanpanah v. Sacramento Valley Mortgage Group*, No. C 09–02024 SBA, 2009 WL 4573381,*6 (N.D. Cal. Dec.1, 2009) ("A request to cancel the trustee's deed is 'dependent upon a substantive basis for liability, [and it has] no separate viability'" (modification original) (quoting *Glue–Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018, 1023 n. 3 (2000)).

### E.    The Fourth Cause of Action Under TILA

The court next addresses Schwartz's fourth cause of action under TILA, as the second and third causes of action depend on the existence of some underlying violation of statutory or common law, and the court has found that Schwartz's arguments regarding the invalidity of the assignments of the deed of trust and the securitization of his loan do not state claims upon which relief can be granted. See *Sanchez v. U.S. Bank, N.A.*, No. C 09–04506 SI, 2010 WL 670632,

*5 (N.D. Cal. Feb. 22, 2010) ("Accordingly, the Court concludes that plaintiff's complaint does not state a claim with respect to the validity of the assignment of the security interest to defendant. Having concluded that plaintiff has not pled any "legally cognizable theory" in support of her declaratory relief claim"). The only remaining basis for Schwartz's Business & Professions Code § 17200 and declaratory relief claims, therefore, could be a violation of TILA.

"Section 1641(g) of TILA requires a purchaser or assignee of a mortgage loan to notify the borrower of the transfer within thirty days." *Derusseau v. Bank of America, N.A.*, No. 11 CV 1766 MMA (JMA), 2011 WL 5975821, *5 (S.D. Cal. Nov. 29, 2011) (citing 15 U.S.C. § 1641(g)). The statute states:

> "[N]ot later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including, (A) the identity, address, telephone number of the new creditor; (B) the date of transfer; (C) how to reach an agent or party having authority to act on behalf of the new creditor; (D) the location of the place where transfer of ownership of the debt is recorded; and (E) any other relevant information regarding the new creditor." *Id.*

Schwartz alleges that this provision applies to U.S. Bank "as the purported and alleged assignee of [his] Loan," i.e., as a creditor that "stands in the shoes" of the originating lender.[38]

U.S. Bank challenges this claim on a variety of bases. It notes first that TILA defines a creditor as a person who both regularly extends consumer credit, and is the person to whom the debt arising from the transaction is initially payable. 15 U.S.C. § 1602(g)(1)-(2). It contends that as "the trustee of a securitized pool," it is not a creditor and therefore is not subject to TILA's notice requirements.[39] In support of this argument, however, U.S. Bank relies primarily on cases holding that trustees *under a deed of trust* are not "creditors" under TILA. See *Hargis v.*

---

[38]FAC, ¶ 64.

[39]Motion at 15.  See also FAC, ¶¶ 25-32 (allegations related to "U.S. Bank Trustee").

*Washington Mut. Bank*, No. C 10–02341 CRB, 2011 WL 724390,*2 (N.D. Cal. Feb. 22, 2011); *Guerrero v. Citi Residential Lending, Inc.*, No. CV F 08–1878 LJO GSA, 2009 WL 926973,*4 (E.D. Cal. Apr.3, 2009); *Boles v. Mescorp, Inc.*, No. CV 08-1989 PSG (Ex), 2009 WL 734133, *3 (C.D. Cal. Mar.18, 2009).[40]  The trustee under a deed of trust stands in a different position to the underlying loan than does the trustee of a securitized pool of loans.  It is the beneficiary of the deed of trust that is the creditor, not the trustee.  By contrast, the trustee of a securitized pool of loans holds legal title to the loans and notes for the benefit of a group of investors.  See, e.g., *King v. Ocwen*, No. 07–11359, 2009 WL 724062, *4 (E.D. Mich. Mar. 18, 2009) ("Securitization involves the sale of a loan by a lender to a new owner – the issuer – who then sells securities to investors.  Those investors purchase 'bonds' that entitle them to a share of the cash paid by the borrowers on the mortgages that are in the pool.  Another party, the trustee – holds legal title to the mortgages and notes for the benefit of pool investors. Yet another party – a servicer – collects the payments, distributes them to the trust and pursues delinquencies when necessary.  On the date of the foreclosure sale on January 3, 2007, U.S. Bank, as trustee, remained the holder of the mortgage"); see also *In re Shilo Inn, Diamond Bar, LLC*, 285 B.R. 726, 729 (Bankr. D. Or. 2002) (holding that trusts holding securitized loans, rather than the investors who purchased an interest in the loans, were the creditors of the debtor).

U.S. Bank also cites *Sakala v. BAC Home Loans Servicing, LP*, CV. No. 10–00578 DAE–LEK, 2011 WL 719482 (D. Haw. Feb. 22, 2011), for the proposition that only creditors are obligated to comply with TILA's notice requirements.  While this is undoubtedly a true statement of the law, it does not help U.S. Bank here.  The result in *Sakala* turned on the fact that plaintiff had failed to plead any facts suggesting that the defendants he had named were "creditors" under TILA.  *Id.* at *8.  It noted that an "assignee under [an] Assignment of Mortgage" could be held liable under TILA, and that the allegations in the complaint indicated

---

[40]U.S. Bank also relies on *Salmo v. PHH Mortg. Corp.*, No. CV 11-1582 ODW (PJWx), 2011 WL 2682151, *2 (C.D. Cal. July 11, 2011), which held that it was not a creditor under TILA.  As the opinion contains only a minimal description of the relevant facts, it is difficult to discern whether it supports defendant's argument.

that the Bank of New York Mellon – the trustee of a securitized pool of loans – was the assignee of the loan. As the court observed, however, plaintiff did not sue Bank of New York Mellon. See *id.* ("At most, Plaintiff has alleged that the Bank of New York Mellon is an assignee under the Assignment of Mortgage, but the Bank of New York Mellon is not a party to this lawsuit").

As a result, the only case U.S. Bank cites that directly addresses the issue is *Brooks v. Cmty. Lending., Inc.*, No. C 07–4501 JF (PVT), 2010 WL 2680265,*10 (N.D. Cal. July 6, 2010). The *Brooks* court stated that "[a]lthough an assignee may be liable for the creditor's violations of TILA, 15 U.S.C. § 1641(a) and (e), nothing in TILA requires that the assignee make disclosures." *Id.* The context in which the court made this observation, however, was distinctly different than the context here. The plaintiff in *Brooks* alleged that the original loan documents she received did not comply with TILA's disclosure obligations. *Id.* at *2. The court's observation that an assignee was not required to make disclosures appears to have referred to the disclosures mandated at the time a loan is made. The case, in fact, does not mention or involve § 1641(g).

By contrast, Schwartz cites *Vogan v. Wells Fargo Bank, N.A.*, No. 2:11–CV–02098–JAM–KJN, 2011 WL 5826016 (E.D. Cal. Nov. 17, 2011), which engaged in an extended analysis as to whether a trustee of a securitized loan pool was exempt from liability under TILA. The *Vogan* court agreed with plaintiffs that it would be odd to hold that U.S. Bank could foreclose on their home, "thereby claiming a beneficial interest in the note securing Plaintiffs' loan," but to conclude that it "was not a creditor subject to TILA's provisions." *Id.* at *4. Noting that "U.S. Bank's argument conflate[d] the trustee of a deed of trust with other types of trustees," it observed that a trustee's duties under California law were prescribed by a statutory scheme, one purpose of which was to limit the liability of such trustees. The *Vogan* court reasoned that "[t]he trustee of a deed of trust is exempt from TILA [liability] because of its limited role under California law, but there is no analogous reason to exempt other types of trustees from TILA's provisions." *Id.* Additionally, the assignment in *Vogan* explicitly assigned ownership of the loan to U.S. Bank, making it a "new owner or assignee" as required by § 1641(g). *Id.* at *5; see also 15 U.S.C. § 1541(g) (triggering obligations "not later than 30 days

1  after the date on which a mortgage loan is sold *or otherwise transferred or assigned to a third*

2  *party*" (emphasis added)).   Consequently, the *Vogan* court held, "[t]he trustee of a deed of trust

3  enjoys limited liability because it only has two duties in the California statutory foreclosure

4  process, but there is no legal basis to support a holding that limits the liability of all trustees in this

5  manner." *Id.*

6         The court finds *Vogan*'s analysis persuasive.   Not only is its reasoning supported by a

7  straightforward reading of the statute's plain text, but the assignments attached to Schwartz's

8  complaint transfer the beneficial interest under the deed of trust, "together with the note or notes

9  therein described or referred to," to U.S. Bank, making it the "new owner" of the note.[41]   The

10 conclusion is further supported by the very nature of the securitization process, in which the

11 trustee of the pool becomes the holder of the mortgages and holds legal title to the notes.   U.S.

12 Bank's first argument, therefore, fails.

13        U.S Bank next asserts that the effective date of § 1641(g) was May 20, 2009, and that

14 because Schwartz's loan was sold in 2005, the provision is inapplicable.   See *Angelini v. Bank of*

15 *America*, Civil No. 11–3011–CL, 2011 WL 2433485, *5 (D. Or. Apr. 27, 2011) ("Plaintiffs

16 appear to allege a violation under 15 U.S.C. 1641(g).   Unfortunately for plaintiffs, this provision

17 does not apply to their claims. . . .   As alleged by plaintiffs, all transfers and assignments of

18 plaintiffs' mortgage loan occurred prior to May 20, 2009, thus, these transfers were not subject

19 to the notice provision created by Section 404").   U.S. Bank is correct that the relevant date is the

20 date the note and deed of trust were sold or assigned; the assignment is the transaction that triggers

21 notice obligations under TILA.   See *Beall v. Quality Loan Serv. Corp.*, No. 10–CV–1900–IEG

22 (WVG), 2011 WL 1044148, *6 (S.D. Cal. Mar. 21, 2011) ("Because the FDIC purportedly

23 assigned Plaintiff's Deed of Trust to OneWest on January 21, 2010, Plaintiff's cause of action

24 would have accrued thirty days thereafter, when OneWest allegedly failed to send the required

25 notification of assignment.   Plaintiff filed the FAC – in which she raises for the first time an

26 allegation under § 1641(g)(1) – on January 10, 2011.   Thus, contrary to OneWest's argument,

27

28        [41]FAC, Exhs. A-B.

which focuses on the time at which Plaintiff's loan was originated, Plaintiff's claim is timely. . .."). Its only evidence of the fact that the loan was sold in 2005, however, is Exhibit B to the complaint. Exhibit B is comprised of the two recorded assignments, which bear recordation dates of January 20 and May 4, 2011.

U.S. Bank counters that under *Herrera* and *Fontenot*, the date of recordation "is not dispositive on whether and when an assignment of the note is effectuated."[42]  See *Herrera*, 205 Cal.App.4th at 1504; *Fontenot*, 198 Cal.App.4th at 267-68.  While this may be true, Schwartz alleges that the assignments were executed on January 20 and May 4, 2011.[43]  U.S. Bank has proffered no evidence that can be judicially noticed that facially contradicts Schwartz's allegation. Although U.S. Bank can rebut the allegation with evidence at a later stage of the litigation, in deciding a motion to dismiss, the court must accept the plaintiff's allegations as true. [44] Consequently, this argument also fails.[45]

Third and finally, U.S. Bank observes that "[a] creditor that fails to comply with any requirement imposed under Section 1641(g) only faces liability for any actual damage sustained by such person as a result of the failure."  *Beall*, 2011 WL 1044148 at *6 (quoting 15 U.S.C.

---

[42]Motion at 15.

[43]FAC, ¶¶ 15-17.  U.S. Bank contended at oral argument that plaintiff's allegations regarding the date of the assignment were inadequate under *Iqbal* and *Twombly*.  Pleading that assignments were executed in January and May 2011 and attaching copies of the documents referenced to the complaint on those dates sufficiently complies with the pleading standard.

[44]The court notes that U.S. Bank is trustee for the holders of the CSFB Adjustable Rate Mortgage Trust 2005-12, Adjustable RateMortgage-Backed Pass-Through Certificates, Series 2005-12.  This strongly suggests that the loan was sold in 2005, shortly after it was made.  The court cannot confirm this, however, without the submission of further evidence.

[45]U.S. Bank asserts that "[e]ven if TILA was retroactive, which it is not, the claim would be barred by TILA's one-year statute of limitations."  (Motion at 15-16 (citing 15 U.S.C. § 1640(e).)  As an initial matter, the court does not find that TILA is retroactive; instead, it concludes, based on the allegations in the complaint, that the allegedly violative conduct took place after the provision's effective date.  Second, the assignments were allegedly made in January and May 2011.  This action commenced on October 21, 2011, well within the one-year limitations period.

1641(a)(1)).  The court respectfully disagrees with *Beall*.  Section 1640(a) provides that a plaintiff can recover actual damages *or* statutory damages of "not less than $400 or greater than $4,000," and if these are proved, attorneys' fees under § 1640(a)(3).  15 U.S.C. § 1640(a)(1) and (2).[46] See *Vallies v. Sky Bank*, 591 F.3d 152, 158 (3d Cir. 2009) ("The compensatory remedy of actual damages is permitted only in cases where the violation caused harm – where harm was 'sustained by [the consumer] as a result of' the violation. . . .  Without detrimental reliance, only statutory damages are available").

Schwartz asserts that he seeks actual damages, statutory damages and attorneys' fees.  To recover actual damages, he must allege facts showing that the damage is actual rather than merely speculative.  *Che v. Aurora Loan Servs., LLC*, __ F.Supp.2d __, 2012 WL 899629,*3 (C.D. Cal. Mar. 15, 2012); *Murphy v. Metrocities Mortg. LLC*, No. CV 11–02719 DDP (CWx), 2011 WL 5319917 *2 n. 2 (C.D. Cal. Sept. 27, 2011) ( "The court notes that even if Plaintiff's TILA claim were timely, she has not alleged any actual damages resulting from Central Mortgage's failure to provide notice of the assignment").  To prove actual damages, a plaintiff must prove detrimental reliance on the faulty disclosure or non-disclosure.  See *Gold Country Lenders v. Smith (In re Smith)*, 289 F.3d 1155, 1157 (9th Cir. 2002) (holding that "actual damages" awards under 15 U.S.C. § 1640(a)(1) compensate only proven injuries or losses that stem from a plaintiff's detrimental reliance on a creditor's wrongdoing); see also *Vallies*, 591 F.3d at 157-58. Schwartz asserts that he has been harmed in a variety of ways, including that "multiple parties *may* seek to enforce his debt obligation against him"; title to his property has been clouded and he has been making payments to the wrong party; he cannot determine whether he has sent payments to the right party; his credit score has decreased; and he has incurred attorneys' fees.[47] This allegation does not clearly plead that Schwartz has suffered actual damage as a result of U.S.

---

[46]Although Schwartz contends that he is entitled to recover attorneys' fees irrespective of whether he proves actual or statutory damages (Opp. at 18), § 1640(a)(3) provides for the recovery of attorneys' fees only when a plaintiff proves actual or statutory damages resulting from a violation of §§ 1635 or 1638(e)(7).

[47]*Id.*, ¶ 76 (emphasis added).

Bank's failure to provide notice; it suggests either possible ways in which Schwartz may be harmed in the future, or damages that appear to flow not from the failure to give notice but from the initiation of foreclosure proceedings against the property. Although Schwartz implies that he has been sending monthly mortgage payments to some entity, there is no factual allegation to this effect anywhere in the complaint. There is no allegation as to where he has been sending mortgage payments, or any allegation as to why Schwartz believes that the recipient of his purported payments is "the wrong party." Finally, Schwartz does not adequately plead detrimental reliance or causation – key elements that must be pled to pursue an actual damages claim. Consequently, Schwartz has not alleged facts that make his claim of actual damage plausible. See *Iqbal*, 129 S.Ct. at 1949 (stating that a claim has facial plausibility where plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

As the TILA claim is currently pled, therefore, Schwartz can recover only statutory damages and attorneys' fees. U.S. Bank's motion to dismiss the claim, however, is denied.

### F.   The Second Cause of Action for Unfair Business Practices

Having addressed the cancellation of instruments and TILA claims, the court turns to Schwartz's remaining causes of action, as they depend entirely on these causes of action. Schwartz's second claim alleges a violation of Business & Professions Code § 17200. "The UCL prohibits 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.'" *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF (PVT), 2010 WL 2898284 *16 (N.D. Cal. July 21, 2010) (quoting CAL. BUS. & PROF. CODE § 17200). "'An act can be alleged to violate any or all of the three prongs of the UCL – unlawful, unfair, or fraudulent.'" *Id.* (quoting *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal.App.4th 1544, 1554 (2007)). The law is "sweeping, embracing anything that can properly be called a business practice and at the same time is forbidden by law." *Cel-Tech. Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999); *Palestini v. Homecomings Fin., LLC*, No. 10CV1049-MMA, 2010 WL 3339459, *9 (S.D. Cal. Aug. 23, 2010) (same).

Schwartz's UCL claim incorporates all prior paragraphs of the complaint, references the

23

purported TILA violation, and appears to allege that U.S. Bank has violated the UCL's "unfair" and "unlawful" prongs.  "For an action based upon an allegedly unlawful business practice, the UCL 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'"  *Stearns*, 2010 WL 2898284 at *16 (quoting *Cel-Tech Communications*, 20 Cal.4th at 180, in turn citing *Farmers Ins. Exch. Super. Ct. v. Superior Court*, 2 Cal.4th 377, 383 (1992)); see also *Jackson v. Ocwen Loan Servicing, LLC*, No. 2:10-cv-00711-MCE-GGH, 2010 WL 3294397, *5 (E.D. Cal. Aug. 20, 2010) ("'Unlawful' practices are practices 'forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulation, or court-made,'" citing *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838-39 (1994), and *People v. McKale*, 25 Cal.3d 626, 632 (1979)).  The statutory reference to "unlawful" conduct is sufficiently broad that it encompasses common law violations as well.  See, e.g., *Paulus v. Bob Lynch Ford, Inc.*, 139 Cal.App.4th 659, 681 (2006) ("Second, '[v]irtually any law or regulation – federal or state, statutory or common law – can serve as [a] predicate for a [Business and Professions Code §] 17200 "unlawful" violation,'" quoting Stern, Bus. & Prof. Code, § 17200 Practice, ¶ 3:56, p. 3-13 (The Rutter Group 2006)).

Allegations supporting a claim under the unlawful prong of the UCL "must state with reasonable particularity the facts supporting the . . . elements" of the alleged violation.  *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp. 1303, 1316 (N.D. Cal. 1997) (quoting *Khoury v. Maly's of Cal., Inc.*, 14 Cal.App.4th 612, 619 (1993)); see also *Jackson*, 2010 WL 3294397 at *5 ("To state a cause of action based on an 'unlawful' business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law," citing *McKale*, 25 Cal.3d at 635).

Schwartz's UCL claim is entirely derivative of his other causes of action.  It alleges, *inter alia*, that U.S. Bank caused assignments of the deed of trust to be recorded "with knowledge that [they] contained a deliberate misstatement and misrepresentation that U.S. Bank had been assigned" the note and the deed of trust.[48]  Schwartz also alleges that U.S. Bank "acted as a

---

[48]FAC, ¶ 41.

beneficiary without the legal authority to do so," and that it violated TILA.[49]   The claim thus depends entirely on Schwartz's other claims.   The court has dismissed the cancellation of instruments claim as insufficiently pled or barred as a matter of law.   Allegations supporting that claim thus cannot provide a basis for holding U.S. Bank liable under the UCL's unlawful prong. See *Carter v. GMAC Mortg., LLC*, No. CIV. 2:10-639 WBS DAD, 2010 WL 3128829, *4 (E.D. Cal. Aug. 6, 2010) ("This cause of action is generally derivative of some other illegal conduct or fraud committed by a defendant, and a plaintiff must state with reasonable particularity the facts supporting . . . elements of the violation," citing *Khoury*, 14 Cal.App.4th at 619).   The court has also found that, while Schwartz's TILA claim is sufficiently alleged, he has not adequately pled actual damage flowing from the purported TILA violation.   It follows *a fortiori* that he has not sufficiently alleged an entitlement to restitution under § 1700.   *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1148 (2003) ("This court has never approved of nonrestitutionary disgorgement of profits as a remedy under the UCL.   While prior cases discussing the UCL may have characterized some of the relief available as 'disgorgement,' we were referring to the restitutionary form of disgorgement, and not to the nonrestitutionary type sought here by plaintiff. The present case merely confirms what we have previously held: Under the UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest").   Schwartz has not alleged that U.S. Bank has unlawfully obtained monies from Schwartz as a result of its purported TILA violation.   If anything, Schwartz's allegations suggest that he has been paying money to someone other than U.S. Bank because U.S. Bank did not disclose the assignment of the note and deed of trust.   Consequently, this aspect of Schwartz's reliance on the unlawful prong of § 17200 also fails.

"[A] practice may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech Communications*, 20 Cal.4th at 180.   To state a viable claim for relief under this prong of the UCL, a plaintiff must show that "(1) the consumer injury [is] substantial; (2) the injury [is]

---

[49]*Id.*, ¶¶ 43-44.

not . . . outweighed by any countervailing benefits to consumers or competition; and (3) it [is] an injury that consumers themselves could not reasonably have avoided." *Camacho v. Auto. Club of S. Cal.*, 142 Cal.App.4th 1394, 1403 (2006); see *Kilgore v. Keybank*, No. C08-2958 TEH, 2010 WL 1461577, *8 (N.D. Cal. Apr. 12, 2010) (concluding that the *Camacho* unfairness standard applied to a consumer unfair business practices action, citing *Davis v. Ford Motor Credit Co.*, 179 Cal.App.4th 581, 596-98 (2009)); *Jackson*, 2010 WL 3294397 at *5 ("To sufficiently plead an action based on an 'unfair' business act or practice, a plaintiff must allege facts showing the 'unfair' nature of the conduct and that the harm caused by the conduct outweighs any benefits that the conduct may have," citing *Motors, Inc. v. Times Mirror Co.*, 102 Cal.App.3d 735, 740 (1980)).

When a consumer, rather than a business competitor, seeks relief under the unfair business practices prong of the UCL, he must show that the business practice violates an established law or policy, or that it is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. See *Watkinson v. MortgageIT, Inc.*, No. 10-CV-327-IEG (BLM), 2010 WL 2196083, *5 (S.D. Cal. June 1, 2010) ("Plaintiff has failed to allege sufficient facts to state a claim for relief under the 'unfair practices' prong. [W]hen an action is brought by a consumer . . . an 'unfair' business practice occurs 'when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,'" citing *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal.App.4th 509, 530 (1984), abrogated on other grounds in *Cel-Tech Communications*, 20 Cal.4th at 186-87 & n. 12); accord *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008).

Although the court found that Schwartz has adequately alleged a violation of established law, i.e., TILA, he has failed to plead any facts supporting an inference that U.S. Bank's TILA violation was "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Schwartz merely asserts, in conclusory fashion, that "the harm caused by [U.S. Bank's] conduct outweighs any benefit that [its] conduct may have," and that it is "designed to

1   defraud California consumers and enrich [U.S. Bank]."[50]   The pleading is utterly devoid of any

2   facts supporting these assertion.   To the extent Schwartz's UCL claim is based on the unfair

3   prong, therefore, it must be dismissed.   See *Watkinson*, 2010 WL 2196083 at *5 ("Plaintiff has

4   failed to allege sufficient facts to state a claim for relief under the 'unfair practices' prong. . . .

5   [T]he Court cannot conclude from [plaintiff's] conclusory allegations whether Defendants' actions

6   'offend[ ] an established public policy' or if they are 'immoral, unethical, oppressive,

7   unscrupulous or substantially injurious to consumers.'   Accordingly, Plaintiff's claim for relief

8   under the 'unfair practices' prong also fails").

9        **G.   The Third Cause of Action for Declaratory Relief**

10       The remaining claim is Schwartz's third cause of action for declaratory relief.   Federal

11  courts sitting in diversity apply the substantive law of the forum state.   See *Clark v. Allstate*

12  *Insurance Co.*, 106 F.Supp.2d 1016, 1018 (S.D. Cal. 2000) ("It is well-established that federal

13  courts sitting in diversity must apply state substantive law and federal procedural rules," citing

14  *Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F.Supp.2d 980, 986 (S.D. Cal. 1999), and

15  *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).   For this reason, federal courts have consistently

16  applied California Code of Civil Procedure § 1060 rather than the federal Declaratory Judgment

17  Act when sitting in diversity.   See, e.g., *Acceptance Insurance Co. v. American Safety Risk*

18  *Retention Group, Inc.*, No. 08cv1057-L(WMc), 2010 WL 744291, *4 (S.D. Cal. Mar. 3, 2010)

19  (applying § 1060 to a declaratory relief claim); *LeFebvre v. Syngenta Biotechnology, Inc .*, No.

20  C 08-02732 JW, 2008 WL 5245056, *3 (N.D. Cal. Dec. 15, 2008) (same); *Smith v. Bioworks,*

21  *Inc.*, No. CIV. S-05-1650 FCD EFB, 2007 WL 273948, *4 n.5 (E.D. Cal. Jan. 29, 2007)

22  ("Plaintiff generally alleges a claim for declaratory relief in his Complaint.   Because this is a

23  diversity action, and because plaintiff alleges that California law applies in this action, the court

24  applies California's declaratory relief statute to plaintiff's claims").[51]

25

26       [50]*Id.*, ¶ 48.

27       [51]A number of courts outside this circuit have found that the federal Declaratory Judgment
28  Act is procedural , not substantive, and therefore that a court sitting in diversity must apply the

"'The purpose of a declaratory judgment [under § 1060] is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation.'" *Meyer v. Sprint Spectrum L.P.*, 45 Cal.4th 634, 647 (2009) (quoting *Maguire v. Hibernia Savings & Loan*, 23 Cal.2d 719, 729 (1944)). "'Another purpose is to liquidate doubts with respect to uncertainties or controversies which might otherwise result in subsequent litigation.'" *Id.* (quoting *Bess v. Park*, 132 Cal.App.2d 49, 52 (1955)). "'One test of the right to institute proceedings for declaratory judgment is the necessity of present adjudication as a guide for plaintiff's future conduct in order to preserve his legal rights.'" *Id.* (quoting *American Telephone & Telegraph Co. v. California Bank*, 59 Cal.App.2d 46, 55 (1943)). Section 1060 "does not require a breach of contract in order to obtain declaratory relief, only an 'actual controversy.' Declaratory relief pursuant to this section has frequently been used as a means of settling controversies between parties to a contract regarding the nature of their contractual rights and obligations." *Id.*[52]

---

federal standard. See, e.g., *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 352 (3d Cir. 1986) ("It is settled law that, as a procedural remedy, the federal rules respecting declaratory judgment actions, apply in diversity cases"); *118 East 60th Owners. Inc. v.. Bonner Properties, Inc.*, 677 F.2d 200, 203 (2d Cir. 1982) ("Normally, the availability of state declaratory relief would be irrelevant to whether federal court may grant such a remedy"). But see *Allstate Ins. Co. v. Charneski*, 286 F.2d 238, 243-44 (7th Cir. 1960) (holding that, because under Wisconsin law, a declaratory judgment of insurance non-coverage was not available, the rule was the substantive policy of the state and had to be applied by a federal court sitting in diversity). The court need not resolve this dispute, because the standard for pleading a declaratory relief claim underin federal and California law is substantially similar.

[52]The federal standard is similar. In general, for a court to exercise jurisdiction under the Declaratory Judgment Act, there must be a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality," *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941), which has "crystallized to the point that there is a specific need" for a declaratory judgment, *J.N.S., Inc. v. Indiana*, 712 F.2d 303, 305 (7th Cir. 1983). "In applying this standard, we focus[ ] upon the position and perceptions of the plaintiff, declining to identify specific acts or intentions of the defendant that would automatically constitute a threat of litigation. The acts of the defendant [a]re instead to be examined in view of their likely impact on competition and the risks imposed upon the plaintiff, to determine if the threat perceived by the plaintiff [was] real and reasonable." *Rhoades v. Avond Products, Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007) (quoting *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982)).

1   The court can identify no present legal controversy between the parties that requires

2   declaratory relief, especially given that the declaratory judgment claim duplicates Schwartz's other

3   causes of action. See *Mangindin v. Washington Mut. Bank*, 637 F.Supp.2d 700, 707–08 (N.D.

4   Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under

5   some other cause of action"); see also *City of Cotati v. Cashman*, 29 Cal.4th 69, 80 (2002)

6   (dismissing plaintiff's declaratory relief claim as duplicative and unnecessary because the claim,

7   which sought a declaration that defendants had no right to foreclose, was "entirely commensurate

8   with the relief sought through the other causes of action").

9   As the court has found, Schwartz cannot challenge the filing of a notice of default based

10   on the securitization of his loan or deficiencies in MERS's assignments of the note and deed of

11   trust. Even had such matters been adequately pled, moreover, it would be wholly duplicative to

12   declare the parties' rights and responsibilities as they relate to those matters.[53]   Consequently,

13   Schwartz's third cause of action for declaratory relief is dismissed. See *Ngoc Nguyen v. Wells*

14   *Fargo Bank, N.A.*, 749 F.Supp.2d 1022, 1038 (N.D. Cal. 2010) ("Plaintiff has failed to state any

15   claims, so there is no actual and present controversy. Further, there has been no showing as to

16   how the declaratory relief claim is not duplicative of other claims in this case. Accordingly, the

17   declaratory relief claim is dismissed").

18

19

20

21

22

23

24

25

26   [53]The declaratory relief claim does not appear to be based on the purported violation of

27   TILA. If it were, however, it would still be appropriate to dismiss it as duplicative since a
declaration of the parties' rights and responsibilities under TILA would be entirely duplicative of

28   any judgment on the TILA claim.

**II.  CONCLUSION**

For the reasons stated, the court dismisses all causes of action except the fourth cause of action alleging a violation of TILA with leave to amend.  If Schwartz wishes to attempt to allege actual damages under TILA, he may amend the fourth cause of action as well.  Schwartz may file an amended complaint within twenty (20) days of the entry of this order, if he can do so consistent with the reasoning set forth in this order.

DATED: August 3, 2012

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

30